UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | 4:19-CR-40003-KES=6 |
| Plaintiff, | |
| vs. | RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |
| AMANDA LEIGH WIEMAN, | |
| Defendant. | |

The United States of America, by and through Assistant United States Attorney Stephanie Bengford, files this response to Defendant's motion for compassionate release.

## FACTUAL BACKGROUND

Wieman was sentenced on November 5, 2019, to 120 months imprisonment for conspiracy to distribute a controlled substance. Docket 242. Wieman's release date is scheduled for February 1, 2028. https://www.bop.gov/inmateloc/ (last checked August 24, 2020). Wieman has served only 10% of her sentence as of July 27, 2020. Doc. 284 at 213. Wieman is housed at the Pekin Federal Correctional Institution (FCI Pekin), located in Pekin, Illinois. *Id;* https://www.bop.gov/locations/institutions/pek/. She is 32 years old. All visitations at this facility have been suspended until further notice. *Id.* To date there is one reported active COVID-19 inmate case, with one recovered, and four reported employee cases at FCI Pekin where the employees have recovered. https://www.bop.gov/coronavirus/ (last checked August 24,

2020). Wieman tested negative for COVID-19 and was put in quarantine but was asymptomatic. Doc. 284 at 15, 23, 46, 167.

Wieman claims she should be released based on COVID-19 risk factors, coupled with her medical conditions including asthma, hypothyroidism, gastro-esophageal reflux disease, ongoing issues with her ears, and endometriosis. Doc. 285 at 2. She also claims she has obesity, based on her Body Mass Index (BMI), but her health problems does not list obesity. *Id.*; Doc. 284 at 1-2 & 178. Also, her general adult medical exam on January 24, 2020, indicated, "Encounter for general adult medical exam without abnormal finding." Doc. 284 at 178.

Wieman's supplemental brief requests the Court reduce her sentence to time served and that a period of home confinement as a condition of supervised release would be a deprivation of her liberty despite the fact that she has served only about a year of her ten year sentence. Docket 284 at 15.[1] As set forth herein, the United States opposes the motion based upon the facts and circumstances presented in this case.

---

[1] BOP has exclusive authority to determine where an inmate serves a custodial sentence, including whether transfer from a secure facility to home confinement is appropriate for a particular defendant. *See Tapia v. United States*, 564 U.S. 319, 331 (2011) ("When a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over [the place of imprisonment and treatment programs]."); *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (per curiam) ("The Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."). Although this Court may make a non-binding recommendation to BOP as to home confinement, BOP's designation decision "is not reviewable by any court." 18 U.S.C. §§ 3621(b) & 3624(c); *see, e.g, United States v. Jones*, 2020 WL 1814616, at *1 (N.D. Cal. Apr. 10, 2020) (denying motion for compassionate release but recommending BOP place defendant in home confinement).

## ARGUMENT

**I. REDUCTION OF DEFENDANT'S SENTENCE IS NOT WARRANTED.**

**A. Applicable law.**

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010). As the Supreme Court has recognized, finality is an important attribute of criminal judgments, and one "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion). Consistent with that principle of finality, Section 3582(c) provides that a court generally "may not modify a term of imprisonment once it has been imposed," 18 U.S.C. § 3582(c), except in three circumstances: (1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), such as that presented by the defendant; (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," 18 U.S.C. § 3582(c)(1)(B); and (3) where the defendant was sentenced "based on" a retroactively lowered sentencing range, 18 U.S.C. § 3582(c)(2).

The compassionate release statute provides, in pertinent part:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A)   the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . .

18 U.S.C. § 3582(c)(1)(A).

This Court may only reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the Court "finds that" either "extraordinary and compelling reasons warrant such a reduction," or the defendant is at least 70 years old and has served at least 30 years in prison, "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[2]

The Sentencing Commission provided explicit examples of what constitutes an "extraordinary and compelling circumstance":

> (A)  **Medical Condition of the Defendant**—
> (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii)  The defendant is—
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-

---

[2] Congress explicitly gave authority to the Sentencing Commission to further describe what conduct would authorize a court to order a compassionate release. Specifically, 28 U.S.C. § 994(t) states that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A), "including the criteria to be applied and a list of specific examples." The statute also states that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)   **Age of the Defendant** — The Defendant is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the ageing process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment; whichever is less.

(C)   **Family Circumstances.** —

(i)   The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or the registered partner.

(D)   **Other Reasons**.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

USSG § 1B1.13 cmt. n.1.  Wieman argues she qualifies under subsection (A) or (D).

To qualify for compassionate release after having exhausted his or her administrative remedies with the BOP, a defendant must be able to demonstrate one of the listed reasons in note 1.  *See United States v. Shields*, 2019 WL 2645028, at *2 (N.D. Cal. June 27, 2019).  The defendant bears the burden to show special circumstances meeting the high bar set by Congress and the Sentencing Commission for compassionate release to be granted.  *See United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (holding defendant bears the burden of establishing entitlement to sentencing reduction).

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that her condition falls within one of the categories listed in the policy statement.  Those categories

include, as relevant here,³ (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1(A). If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), her motion must be denied.

A defendant who cannot show she is has a medical condition that puts her at risk for COVID-19 cannot demonstrate "extraordinary and compelling" circumstances. *United States v. Bradley*, 2020 WL 3036362, at *2-3 (D.S.D. June 5, 2020). "COVID-19 appears to pose a particular risk for individuals with certain existing health conditions." *Id.* (citing Groups at Higher Risk for Severe Illness, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html). Indeed, before the outbreak of COVID-19, district courts addressing § 3582(c)(1)(A) claims routinely noted: "To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [she] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020) (rejecting a claim for compassionate

---

³ Wieman is not relying on her age or family circumstances, meaning those provisions (including Application Note 1(B) or 1(C)) are not applicable as well as Note 1(A)(iii).

release from a defendant suffering from severe back injuries and epilepsy) (quoting *United States v. Weidenhamer*, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019)). Compassionate release is a "rare" and "extraordinary" event, and courts routinely denied such claims before the current national emergency. *United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020).

The existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not by itself fall into these categories and therefore could not alone provide a basis for a sentence reduction. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (holding "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release"). The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population.

This Court may only reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the Court "finds that" either "extraordinary and compelling reasons warrant such a reduction," or the defendant is at least 70 years old and has served at least 30 years in prison, "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

### B. Wieman's Health Conditions.

<u>Obesity</u>

Obesity is listed as a condition placing a person at increased risk of severe illness from COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed August 21, 2020) (noting BMI exceeding 30 is considered "obese"). The Department of Justice has opined that obesity with a BMI over 30 constitutes an extraordinary and compelling reason for a sentence reduction because the CDC has identified obesity on a list of conditions that, according to current data, "are at increased risk of severe illness from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html. The CDC has two lists of conditions those that "are at increased risk" and those that "might be at an increased risk." *Id.* During the current COVID-19 pandemic, an inmate who presents with one of the risk factors on the list of conditions that "are at increased risk of severe illness" according to the CDC, as confirmed by medical records, and who is not expected to recover from that condition, presents an extraordinary and compelling reason allowing compassionate release under the statute and guideline policy statement, even if

that condition in ordinary times would not allow compassionate release. A diagnosis of obesity with a BMI of 30 or higher, coupled with the risk of COVID-19, is considered by DOJ guidance to present "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), in that the inmate's ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished, within the environment of a correctional facility, by the chronic condition itself.

However, Wieman has not met her burden to show she is obese. Wieman's only reference to her BMI in the medical records provided by BOP is from a January 2020 general adult medical exam. Doc. 284 at 115, 178. The record states, "(BMI ? 37)" in one locations and "Value 37" in another. Doc. 284 at 115. However, no official diagnosis of obesity is contained in Wieman's health problems to definitively show she has been diagnosed as obese. Doc. 284 at 178. In sum, Wieman has not met her burden to demonstrate compassionate release is warranted based on obesity. *Greenhut*, 2020 WL 509385, at *1 (noting defendant bears burden to establish entitlement to sentence reduction). Even if Wieman is considered obese, however, compassionate release is not warranted after consideration of the § 3553(a) factors, as explained below.

<u>Asthma</u>

As to Wieman's asthma, an x-ray of her lungs was done on or about February 19, 2020. The findings indicate, "Lungs are clear No plural effusions.

Bony elements are within normal limits for age.  No acute osseous abnormality." Doc. 284 at 195 & 197.  The impression indicates, "Lungs are clear.  Heart size is normal." *Id.* at 195.  When she was transported in October of 2019, she did not receive any asthma medication for transport.  *Id.* at 200.  Post-COVID-19, on July 20, 2020, she requests to see a doctor about her asthma.  *Id.* at 17.  The comments on that date indicate: "Inmate has been seen multiple time for asthma without significant findings.  Inmate has been upset and complaining that she was changed from home medication to formulary medication on arrival and states it does not feel like it is working.  Lung sounds have been clear on multiple visits.  Previously attempts at peak flow were met with very poor effort from inmate."  Doc. 284 at 17.  Post-COVID, on May 20, 2020, a subjective report of shortness of breath was also made.  *Id.* at 81.  On March 30, 2020, another subject complaint relating to her asthma was made.  *Id.* at 87.  Pre-COVID 19 lock down, on January 23, 2020, as to asthma, the notes indicate "well controlled."  *Id.* at 109.  She has been prescribed Albuterol inhalers, not for daily use, but to prevent asthma attacks.  *See, e.g., id.* at 171, 24 (showing recent prescriptions).  Her asthma has been diagnosed as under good control.  Thus, the medical records show Wieman's asthma has been managed or controlled by medical care and prescriptions.

Her "Asthma" is stable, well controlled and does not meet the threshold of "moderate to severe asthma" required by the CDC.  *United States v. Khawaja*, 2020 WL 1940848, at *4 (D.N.H. Apr. 22, 2020) (court holding CDC guidelines regarding additional risk to the individual are if the individual has "moderate to

severe asthma"). In addition, Wieman's asthma is well managed at her FCI. *See Ayon-Nunez*, 2020 WL 704785, at *2–3. Her asthma does not meet the high burden justifying release.

### Other Health Conditions

Wieman specifically relies on her obesity and her asthma in arguing that she has met extraordinary or compelling circumstances for release based upon the risk of COVID-19. Doc. 285 at 5, 8-10. She generally mentions her hypothyroidism, gastro-esophageal reflux disease, endometriosis pain, issues with her ears, and mental health conditions without explaining how these conditions fall within the CDC list of conditions which are at severe risk for COVID-19. Doc. 285 at 9. These conditions are not included within either of the CDC risk factor lists. Wieman has not met her burden that these conditions amount to extraordinary or compelling circumstances justifying relief.

Given the medical records and conditions of the Defendant, Defendant has not met her burden that there are extraordinary or compelling circumstances justifying relief under subsection (A)(i) or (A)(ii). Under subdivision (A)(i) or (ii), Defendant must prove she is unable to provide self-care within the environment of a correctional facility. Defendant's medical records do not support that Defendant's conditions make her unable to provide self-care within the environment of a correctional facility. See generally Doc. 284; *United States v. Korn,* 2020 WL 1808213 at *5 (W.D.N.Y. Apr. 9, 2020) (defendant can walk with a cane, dress, bathe, eat and perform activities of daily living); Doc. 284 at 20 (Wieman walking with an upright and steady gait). In addition, she has not

established that she has been diagnosed with obesity which is one of the conditions listed by the CDC which increases risk for severe illness.

In addition, Defendant's conditions coupled with COVID-19 do not meet the catch-all provision. The Bureau of Prisons has made substantial changes to its operations, detailed on its website. *See* https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed June 26, 2020). While potential continued exposure to the virus that causes COVID-19 is not something to take lightly, it simply does not "'warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease.'" *United States v. Gold*, No. 15 CR 330, 2020 WL 2197839, at *1 (N.D. Ill. May 6, 2020); (quoting *United States v. Miller*, No. 18-CR-30034, 2020 WL 2093370, at *2 (C.D. Ill. May 1, 2020)). Here, Wieman, cannot meet her high burden of extraordinary and compelling circumstances under the catch-all provision as well.

"General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. §1B1.13." *Eberhart*, 2020 WL 1450745, at *2. The Third Circuit echoed this principle in an appeal by an inmate at heightened risk because of his age (68) and health condition (Parkinson's disease, diabetes, and heart issues):

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently

> justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. *See generally* Federal Bureau of Prisons, *COVID-19 Action Plan* (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid-19.jsp.

*Raia*, 954 F.3d at 957. The United States does not minimize the seriousness, but Defendant must meet her burden for compassionate release and she has failed to do so. While COVID-19 is undoubtedly serious, and the situation is dynamic, Defendant has not met her burden to demonstrate compelling circumstances warranting her immediate release.

Finally, this Court may only reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the Court "finds that" either "extraordinary and compelling reasons warrant such a reduction," or the defendant is at least 70 years old and has served at least 30 years in prison, "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Defendant also cannot meet her burden that release is appropriate under the § 3553(a) factors.

### B. Section 3553(a) Factors Weigh Against Defendant's Release.

Wieman's request for a sentence reduction should be denied because the factors pursuant to 18 U.S.C. § 3553(a) weigh strongly against her release. She must demonstrate that she is not a danger to the safety of the community or otherwise merits release under the § 3553(a) factors. Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community."

USSG § 1B1.13(2).  Additionally, this Court must consider the § 3553(a) factors, as applicable, as part of its analysis.  *See* § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020).

Wieman would pose a danger to public safety if released.  Wieman's crime is a serious one.  History of continued narcotics activity is a danger to the community.  *United States v. Zaragoza*, 2008 WL 686825, at *3 (N.D. Cal. Mar. 11, 2008) (Spero, J.) ("In assessing danger, physical violence is not the only form of danger contemplated by the statute.  Danger to the community can be in the form of continued narcotics activity or even encompass pecuniary or economic harm."). This Court should deny a sentence reduction on the basis of the § 3553(a) factors and that she is a danger to the community.

The remaining § 3553(a) factors strongly disfavor a sentence reduction. The Court imposed its sentence, and it reflects the seriousness of the offense. Requiring Wieman to serve the full sentence imposed promotes respect for the law, and provides just punishment for the offense.  As of the end of July, Wieman has served only 10% of her sentence.  The nature of the crime does not warrant an additional reduction.  A reduction to only 10% of the original sentence would not be a deterrent and would create a disparity in sentencing as to other similarly situated individuals.  Accordingly, in light of the totality of relevant circumstances, this Court should deny the motion for a sentence reduction.

II. **IF THIS COURT MODIFIES DEFENDANT'S SENTENCE, IT SHOULD IMPOSE SUPERVISED RELEASE WITH A CONDITION OF HOME CONFINEMENT FOR THE DURATION OF THE TERM OF IMPRISONMENT AND OTHER SPECIFIED CONDITIONS.**

If the Court is inclined to grant Wieman's motion for compassionate

release, this Court should substitute a term of probation or supervised release with a condition of home confinement for the duration of Wieman's current sentence of imprisonment. The government submits that releasing Wieman outright would not appropriately re-balance the § 3553 factors of this case, particularly given that the present conditions caused by the pandemic are likely impermanent—public reporting indicates that various medical professionals globally are in the process of developing a vaccine and researching other methods of combatting the disease in the coming months. *See, e.g.*, https://www.nih.gov/news-events/news-releases/nih-clinical-trial-investigational-vaccine-covid-19-begins (last accessed May 15, 2020). In order to minimize risks to public health, the government also respectfully requests that (1) if it orders release, any order provide release only after Defendant's release and travel plans are in place, and (2) set any release 14 days from the date of its order to accommodate BOP's ability to quarantine Wieman prior to her release to protect the community from potential further spread.

        RONALD A. PARSONS, JR.
        United States Attorney

        */s/ Stephanie C. Bengford*
        _____
        Stephanie C. Bengford
        Assistant United States Attorney
        325 S. 1st Ave., Suite 300
        Sioux Falls, South Dakota 57104
        Telephone: (605) 330-4400
        Stephanie.Bengford@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 24, 2020, a true and correct copy of the foregoing Response to Motion for Compassionate Release was served upon defendant as follows:

Molly Quinn - CMECF

/s/ *Stephanie Bengford*

STEPHANIE BENGFORD
Assistant United States Attorney