UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>AMANDA LEIGH WIEMAN,<br><br>Defendant. | 4:19-CR-40003-06-KES<br><br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Amanda Leigh Wieman, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 282. Plaintiff, the United States of America, opposes the motion. Docket 288. For the following reasons, the court denies defendant's motion for compassionate release.

## BACKGROUND

Wieman pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Dockets 158, 174. On October 28, 2019, this court sentenced Wieman to 120 months in custody and 5 years of supervised release. Docket 231; Docket 242 at 2-3. Wieman is eligible for home confinement on August 1, 2027, and her current anticipated release date is February 1, 2028. Docket 284 at 212.

Wieman is incarcerated at Federal Correctional Institution (FCI) Pekin, a medium-security correctional institution in Pekin, Illinois. *Id.*; Docket 285 at 1. As of September 10, 2020, there are currently two active COVID-19 cases among FCI Pekin's inmates, one inmate and four staff have recovered from COVID-19, and there are zero deaths from COVID-19. *See BOP: COVID-19*

*Update*, Federal Bureau of Prison, https://www.bop.gov/coronavirus/ (last visited on Sept. 10, 2020).

Wieman's health conditions include obesity, asthma, hypothyroidism, gastro-esophageal reflex disease, otitis media in both ears, and endometriosis. Docket 284 at 1-2, 115. Wieman takes medication to treat her hypothyroidism, gastro-esophageal reflex disease, otitis media, and endometriosis. *Id.* at 24-25, 72, 81, 111. Additionally, she is prescribed two inhalers to control her asthma. *Id.* at 24-25, 109. In March of 2020, Wieman weighed 260.9 pounds, and she is 70 inches tall. *Id.* at 116, 148. Based on her height and weight, her body mass index (BMI) is 37.3. *Adult BMI Calculator*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi _calculator.html (last visited on Sept. 10, 2020); *see also* Docket 284 at 115.

Wieman submitted an Inmate Request to Staff form to the warden, requesting compassionate release because of her health and COVID-19. *See* Docket 284 at 218. On May 5, 2020, the warden denied Wieman's request. *Id.*

Wieman filed a pro se motion with the court for relief under the First Step Act. Docket 282. Wieman's counsel subsequently filed a supplement to her pro se motion. Docket 285.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-

391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release. § 603. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Wieman argues that the "unprecedented and extraordinary risk posed by the global COVID-19 pandemic," together with her a health conditions, satisfies the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 285 at 1. Wieman requests a sentence of time served and, if deemed necessary by the court, a period of home confinement as a condition of supervised release. *Id.*

I.      **Administrative Exhaustion**

Previously, only the Bureau of Prisons (BOP) Director possessed the authority to bring a compassionate release motion on a defendant's behalf.

With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

The warden denied Wieman's request for home confinement on May 5, 2020. The 30-day period expired on June 4, 2020. Given that the 30-day waiting period required by 18 U.S.C. § 3582(c)(1)(A) has lapsed, Wieman's motion is ripe for review on the merits.

## II. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A)(i) provides that the sentencing court may grant compassionate release based on "extraordinary and compelling reasons[.]" Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id.* Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The four scenarios pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* Additionally, there is a fifth catch-all category for an "extraordinary and compelling reason other

than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1(D).

After the FSA was passed, the Sentencing Commission did not update its policy statement because the Sentencing Commission has not had a quorum. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future."). As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies. *See United States v. Rodd*, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown*, 2020 WL 2091802, at *5-6 (S.D. Iowa Apr. 29, 2020). It is clear that Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission. *See* 132 Stat. at 5239; 18 U.S.C. § 3582(c)(1)(A). But the Commission has not addressed whether the policy statement from the old regime is applicable to the new statute nor has it adopted a new policy statement. Because the First Step Act changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Condon*, 2020 WL 2115807, at

*3 (D.N.D. May 4, 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Beck*, 425 F. Supp. 3d 573, 578-80 (M.D.N.C. 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13."); *see also United States v. Frith*, 2020 WL 4229160, at *2 (D.N.D. July 23, 2020).

Assuming that the policy statements continue to apply to compassionate release motions brought under the amended FSA, Wieman has failed to show that her health conditions rise to extraordinary and compelling circumstances.

Wieman contends that her circumstances warrant relief under the medical conditions category, U.S.S.G. § 1B1.13 comment note 1(A), and the catch-all provision, U.S.S.G. § 1B1.13 comment note 1(D). Docket 285 at 3-14. Wieman argues that her health conditions put her at high-risk of serious complications if she contracts COVID-19. *Id.* at 8.

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. People with the following health conditions are at an increased risk of severe illness from COVID-19: cancer, chronic kidney disease, COPD, immunocompromised state from organ transplant, obesity (a BMI of 30 or higher), serious heart conditions, sickle cell disease, and Type II diabetes. *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention,

6

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal (Aug. 14, 2020). The Centers for Disease Control and Prevention (CDC) also provided a list of medical conditions that *might* put a person at an increased risk of severe illness from COVID-19. *Id.* These medical conditions include asthma (moderate to severe), hypertension or high blood pressure, smoking, liver disease, Type 1 diabetes mellitus, and several others. *Id.*

The court has reviewed the medical records submitted in this case. Wieman's health conditions include obesity, asthma, hypothyroidism, gastro-esophageal reflex disease, otitis media in both ears, and endometriosis.

With a BMI of 37.3, Wieman is obese, and therefore, she presents the additional risk factor of obesity. The United States appears to concede that obesity is an "extraordinary and compelling reason" for a sentence reduction. Docket 288 at 8-9. To the extent the United States suggests that obesity standing alone qualifies as a compelling and extraordinary reason warranting release, the court disagrees. "[T]he fact that [Wieman] suffers from obesity during the age of the COVID-19 pandemic does not necessarily mean, on its own, that extraordinary and compelling reasons justify the reduction of [her] sentence." *United States v. Williams*, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020); *see also United States v. McAbee*, No. 4:14-CR-40027-KES, 2020 WL 5231439, at *3 (D.S.D. Sept. 2, 2020) (finding defendant with asthma and a BMI of 30.8 or 31.7 did not establish extraordinary and compelling reasons); *United States v. Saenz*, No. 3:10-CR-30027-RAL, 2020 WL 4347273, at *5

7

(D.S.D. July 29, 2020) (finding defendant with other medical conditions and a BMI between 40 and 44.9 did not establish extraordinary and compelling reasons). Wieman has not identified how her obesity prevents her from providing self-care in a correctional facility setting or how it amounts to extraordinary and compelling circumstances.

Wieman's asthma is listed as a medical condition that *might* increase the risk of severe illness from COVID-19. In her BOP medical records, there is an absence of documentation showing that Wieman's asthma is moderate or severe. Although Wieman made numerous subjective complaints that her asthma was uncontrolled, her medical providers continually noted that her lungs were clear, and she had no shortness of breath. Docket 284 at 12, 17, 27, 80, 85, 91-92, 103, 109. According to the medical records, Wieman's asthma appears to be managed with two prescribed inhalers. *Id.* at 12, 17, 24-25, 27, 80, 85, 91-92, 103, 109; *see United States v. Muhlenhardt*, 2020 WL 4697112, at *4 (D. Minn. Aug. 13, 2020) ("[D]espite the risk [the defendant's] asthma can present, the Court agrees with the findings of several courts that this risk alone is insufficient to warrant release."); *United States v. Slone*, 2020 WL 3542196, at *6 (E.D. Pa. June 30, 2020) ("[A]n incarcerated person arguing extraordinary and compelling reasons based on asthma which is not moderate to severe is not entitled to compassionate release."). Wieman's other medical conditions—hypothyroidism, gastro-esophageal reflux disease, otitis media in both ears, and endometriosis—are not listed as medical conditions that might increase the risk of severe illness from COVID-19.

While some of Wieman's medical conditions may put her at a higher risk of severe illness if she contracts COVID-19, that has not been the case as of yet. *See United States v. Fry*, 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) (holding that to merit compassionate release, inmate "must show more than a mere speculation of the possibility of contracting the virus."). Additionally, there is no evidence in the record to suggest she has not been able to manage her medical conditions while in the prison environment. Wieman is receiving medical attention and treatment for these conditions, which all appear to be stable, controlled, or monitored. *See, e.g.*, Docket 284 at 12, 71-73, 79-81, 109-11 (detailing sick calls and follow-up visits and medication for health conditions). "Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) (internal quotation omitted). Thus, the court finds that Wieman does not satisfy the criteria under U.S.S.G. § 1B1.13 comment note 1(A) or U.S.S.G. § 1B1.13 comment note 1(D).

Additionally, Wieman's motion has not shown that the BOP's response to the pandemic at FCI Pekin has been inadequate in any way. *See United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("[T]he mere possibility of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme." (emphasis omitted)). At the present time, there are two active COVID-19 cases among the inmates at

FCI Pekin. "Thus, it appears that the facility has been responding to and defending against the threats of the virus in a vigorous and generally effective manner." *United States v. Williams*, 2020 WL 4756738, at *4 (E.D. Pa. Aug. 17, 2020); *see also United States v. Berry*, 2020 WL 4035457, at *3 (D.N.J. July 17, 2020) ("[G]iven the markedly restrained progression of the virus within FCI Schuylkill, as compared to within the Delaware Valley region generally, BOP's Action Plan appears to be having a positive impact."). Although Wieman is unable to practice preventative measures as effectively in custody as she would in home confinement, FCI Pekin encourages inmates to wash their hands frequently, wear facial masks, and practice social distancing when feasible. *See* Docket 284 at 94; *BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Sept. 10, 2020). Wieman can do all those recommendations to some extent.

  The court believes that Wieman's health conditions are appropriately managed at FCI Pekin, that the facility is engaged in strenuous efforts to protect inmates against the spread of COVID-19, and that it would act to treat any inmate who does contract COVID-19. Although the court in no way underestimates Wieman's health conditions, such ailments, coupled with the present conditions at FCI Pekin, do not establish extraordinary and compelling reasons justifying her early release.

  Even assuming Wieman's medical conditions are "extraordinary and compelling reasons warrant[ing] such a reduction" under 18 U.S.C. § 3582(c)(1)(A)(i), the sentencing factors in § 3553(a) do not weigh in favor of a

reduction. Wieman was involved in a conspiracy to distribute 500 grams or more of methamphetamine; she was found responsible for distributing approximately 194.8 grams of methamphetamine. Docket 218 ¶ 45. At one point during the conspiracy, she exchanged a firearm for methamphetamine. *Id.* ¶¶ 42, 51. When sentencing Wieman less than a year ago, the court factored in Wieman's limited criminal history and sentenced her to the mandatory minimum of 120 months. Wieman has served approximately only 10% of her full term and approximately 12% of her statutory term. Docket 284 at 213. And she appears, to her credit, to have worked on improving herself in custody. *Id.* at 209-10. But the original sentence was chosen with care, considering Wieman's and her community's needs and all of the other applicable sentencing factors. Therefore, the court finds that Wieman's sentence of 120 months in custody with 5 years of supervised release continues to be appropriate for the seriousness of the crime to which she pleaded guilty.

## CONCLUSION

Wieman has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Docket 282) is denied.

Dated September 11, 2020.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE
